**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 17, 2012**

# In the Court of Appeals of Georgia

A12A0093. RAWLS v. THE STATE.                    DO-004 C

DOYLE, Presiding Judge.

Following a jury trial, Julius Rawls appeals his conviction of aggravated assault with intent to rape,[1] aggravated sexual battery,[2] and child molestation,[3] contending that the trial court erred by (1) denying his motion in limine concerning evidence that he had been drinking alcohol, (2) asking a witness questions proving venue, (3) denying his motion for a directed verdict as to the aggravated assault charge, and (4) denying his claim for ineffective assistance of counsel. For the reasons that follow, we affirm.

---

[1] OCGA § 16-5-21 (a) (1).

[2] OCGA § 16-6-22.2 (b).

[3] OCGA § 16-6-4 (a) (1).

Construed in favor of the verdict,[4] the evidence shows that in May 2003, Rawls appeared at his ten-year-old daughter's school to pick her up before the regular dismissal time. The school secretary called for the daughter, D. R., on the intercom and, as she spoke to Rawls, noticed that he smelled of alcohol. When D. R. arrived and saw her father waiting, she immediately grew afraid and began crying. The secretary called the school counselor, who noticed D. R.'s fearful demeanor and called her back to the office as she and Rawls were walking out. Rawls kept walking and left the school property without waiting for D. R. or speaking to school staff. Upon questioning, D. R. disclosed that her father had sexually abused her, and the counselor escorted D. R. to her grandmother's residence, which was in the same apartment complex as her father, across the street from the school.

The Department of Family and Children Services was notified of the outcry, and D. R. was removed from her home and interviewed by a forensic specialist at a child advocacy center. D. R. explained that her father sometimes picked her up from school early and brought her home where he forced her to disrobe, he touched her breasts and fondled her vagina, and on at least one occasion he forcibly attempted to have intercourse with her, but she had been able to push him off of her.

---

[4] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

Based on the investigation, Rawls was charged with aggravated assault with intent to rape, aggravated sexual battery, and two counts of child molestation. A jury found him guilty on all counts,[5] and Rawls moved for a new trial, which motion was denied, giving rise to this appeal.

1. Rawls contends that the trial court erred by denying his motion in limine seeking to exclude testimony by school personnel that he smelled of alcohol on the day that D. R. made the outcry at school. Specifically, Rawls argues that the trial court erroneously concluded that (a) the testimony was res gestae, and (b) there was an adequate factual basis for the testimony. We review the trial court's denial of a motion in limine for an abuse of discretion.[6]

(a) *Res gestae*. At the hearing on Rawls's motion, the trial court concluded that the evidence of Rawls's alcohol use on the day of the outcry was admissible because "it goes to the res gestae[,] and it's relevant to that extent." Rawls argues that because no crime was committed on the day of D. R.'s outcry at school, the circumstances of that day cannot be considered part of the res gestae of the crime.

---

[5] One child molestation count was merged with the aggravated assault count for purposes of sentencing.

[6] See *Thompson v. State*, 277 Ga. App. 323, 324 (2) (626 SE2d 825) (2006).

3

"Surrounding circumstances constituting part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court; it does not matter that the [circumstance] does not establish directly the main offense."[7] Here, D. R. had described the abuse to interviewers and in direct testimony as occurring when Rawls had been drinking alcohol and when he picked her up early from school, as he did on the day of her outcry at school. Specifically, D. R. told the forensic interviewer that "he does this when he's drunk sometimes," and she testified at trial that she smelled alcohol when he abused her. The outcry itself was direct evidence of the abuse,[8] and Rawls's odor of alcohol on the day of D. R.'s outcry was relevant as one of the circumstances leading up to the outcry, particularly because it aroused suspicion by school personnel who intervened and precipitated D. R.'s outcry. Further, evidence that Rawls had

---

[7] *Latham v. State*, 195 Ga. App. 355, 356 (2) (393 SE2d 498) (1990). See also *Hart v. State*, 185 Ga. App. 141, 142-143 (4) (363 SE2d 599) (1987) ("The State is entitled to inform the jury of all the circumstances surrounding the commission of the crime or crimes charged[,] and we find no error in admitting this evidence as part of the res gestae even though it may have incidentally placed the defendant's character in evidence.") (punctuation omitted)).

[8] See, e.g., *Dent v. State*, 220 Ga. App. 147 (1) (469 SE2d 311) (1996) (outcry to family members was evidence corroborating the victim's direct testimony). Rawls does not challenge the admissibility of the outcries under the Child Hearsay Statute, OCGA § 24-3-16.

consumed alcohol did not itself place his character at issue,[9] so in the absence of any other articulated basis to exclude the evidence, the trial court did not abuse its discretion by admitting the evidence as a part of the circumstances of the outcry.

(b) *Factual basis*. Rawls argues that because D. R. did not specifically testify that she smelled alcohol on him on the day of her outcry at school, there was an inadequate factual basis to admit the evidence. Nevertheless, the factual basis demonstrating the relevance of the evidence did not depend on D. R.'s subjective belief of Rawls's use of alcohol on the day of her outcry. As explained above, Rawls's odor of alcohol was part of the relevant circumstances surrounding D. R.'s outcry, at least in part because it was a cause of concern among the school personnel who offered direct testimony of their observations. Therefore, we discern no abuse of discretion.

2. Rawls next contends that the trial court improperly asked questions eliciting evidence proving venue in the following colloquy:

---

[9] See *Steverson v. State*, 276 Ga. App. 876, 880 (4) (625 SE2d 476) (2005) ("The consumption of alcohol by an adult is irrelevant to the issue of character.") (punctuation omitted).

5

State [to the school guidance counselor]: When [D. R.] told you that her father forced himself upon her, did she tell you what part of her body he touched?

Witness: Yes. Her breasts and her vagina.

State: Thank you. Nothing further, Judge.

Court: Let me ask you, ma'am[,] where is the school located?

Witness: It's in Atlanta, Georgia. And the school at that time was located on Fair Street.

Court: Is that in Fulton County?

Witness: Fulton County, Judge.

Court: And those apartments, where are they located?

Witness: They're located directly across from the school.

Court: All right. Is that in Fulton County?

Witness: Yes, in Fulton County, Judge.

Court: Thank you. All right. [Witness excused.]

6

Rawls points out that up until this point,[10] the State had not proved venue, an essential jurisdictional fact which the State had the burden to prove.[11] Rawls argues that the trial court abandoned its role as an impartial arbiter in violation of OCGA § 17-8-57, which provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

This colloquy is similar to those analyzed in *State v. Anderson*[12] and *State v. Gardner*,[13] two close-in-time Georgia Supreme Court cases reaching opposite conclusions about the propriety of a trial court's questions concerning venue. The cases turn on whether the trial court expressed an actual opinion as to whether venue had been proved. In *Gardner*, the Court addressed a colloquy at the close of the State's first witness in which the trial court asked, "Prove venue. Did you prove venue? . . . Why don't we go ahead and do that before we forget it."[14] In that case, the

---

[10] The State had not rested and the State did later elicit proof of proper venue from a different witness.

[11] See, e.g., *Jones v. State*, 272 Ga. 900, 901-902 (2) (537 SE2d 80) (2000).

[12] 287 Ga. 159 (695 SE2d 26) (2010).

[13] 286 Ga. 633 (690 SE2d 164) (2010).

[14] Id. at 633.

7

Court held that the trial court had not actually expressed an opinion as to whether venue had been proved, so there was no violation of OCGA § 17-8-57.[15]

In *Anderson*, the Court reached the opposite conclusion with respect to the following questions by the trial court: "Did we establish venue on this one? . . . All right. I know we had some confusion because she had worked at one [location] and she's now working at another [location]. *I just wanted to make sure*."[16] Based on those comments, the Supreme Court concluded that the trial court went farther than the comments in *Gardner* and had intimated an opinion with the remark, "I just wanted to make sure."[17] Therefore, the Court held that the trial court had violated OCGA § 17-8-57.[18]

Here, the trial court's questions are more akin to the colloquy in *Gardner*, so they do not constitute reversible error.[19] In the present case, the trial court merely

---

[15] See id. at 635.

[16] (Emphasis supplied.) *Anderson*, 287 Ga. at 160 (1).

[17] See id. at 160-161 (1).

[18] See id. at 161 (1).

[19] But we note the cautionary language in that case strongly discouraging "the giving of direction or the use of language that could create the appearance of alignment between the trial court and either the prosecution or defense." *Gardner*, 286 Ga. at 635.

8

asked the witness questions about the locations of events and did not refer to whether venue had been proved. "A trial judge may propound questions to a witness to develop the truth of the case or to clarify testimony, and the extent of such an examination is a matter for the trial court's discretion,"[20] so long as no opinion is intimated by the court. Based on the record before us, we discern no error.

3. Rawls next contends that the trial court erroneously denied his motion for a directed verdict as to the charge of aggravated assault with intent to rape.[21] Specifically, he argues that because an assault can be committed by placing the victim in "reasonable apprehension of immediately receiving a violent injury,"[22] he should have been charged with attempted rape because otherwise the criminal act would necessarily turn on the victim's subjective fear of being raped. But this ignores the statutory requirement that the victim's fear of injury be "reasonable," and the facts

---

[20] (Citation omitted.) *Finley v. State*, 286 Ga. 47, 51 (9) (a) (685 SE2d 258) (2009).

[21] See OCGA § 16-5-21 (a) ("A person commits the offense of aggravated assault when he or she assaults: (1) With intent to murder, to rape, or to rob . . ."); OCGA § 16-5-20 ("A person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.").

[22] OCGA § 16-5-20 (a) (2).

presented here – that Rawls disrobed D. R., forced her onto a bed, and attempted to have intercourse with her before she pushed him off – supported the finding that Rawls committed the elements of aggravated assault with intent to rape.[23]

4. Finally, Rawls contends that the trial court erred by denying his claim for ineffective assistance of counsel, based on trial counsel's failure to: (a) object to the State's opening statement commenting on what evidence the defense would present; (b) object to the State's bolstering of witnesses' credibility; (c) call Rawls to testify; and (d) object to the State's closing argument as to the prosecutor's personal opinion of the evidence and offenses.

Under *Strickland v. Washington*,[24] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's

---

[23] See *Wright v. State*, __ Ga. App. __ (1) (Case No. A11A1621; decided Feb. 27, 2010) (evidence that defendant attacked victim and dragged her toward secluded area supported conviction for attempted rape and aggravated assault with intent to rape); *Smith v. State*, 313 Ga. App. 170, 174 (2) (721 SE2d 165) (2011) ("conviction for aggravated assault with intent to rape [can be] supported by the same evidence that he assaulted the victim with the intent to rape"); *Butler v. State*, 194 Ga. App. 895, 897 (2) (392 SE2d 324) (1990) ("The crime of aggravated assault with intent to rape is complete when there is a substantial step toward a battery of the victim, i.e., an assault, coupled with intent to rape.") (punctuation omitted).

[24] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[25] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case."[26] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[27] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[28]

(a) *Failure to object to the State's opening statement.* Rawls argues that his trial counsel performed deficiently by failing to object to certain statements by the State made during its opening statement that commented on what evidence the

---

[25] See id. at 687-688, 694 (III) (A)-(B).

[26] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[27] See *Strickland*, supra, 466 U. S. at 697 (IV); *Fuller v. State,* 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[28] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

defense would produce.[29] But at the hearing on Rawls's motion for new trial, trial counsel testified that during the opening statement, he would not want to "appear as though we're trying to hide something, especially when [the defense would bring out the evidence mentioned by the State]. To stand up and try to block that doesn't seem to be a great tactical value." This is consistent with trial counsel's stated philosophy that "overall, I'm not one to necessarily just stand up for the purposes of correcting a record or – for instance, if something is potentially damaging or damaging to my client, if I'm going to draw a great deal more attention to it, that's a factor I will take into consideration." In light of this reasonable trial strategy, Rawls cannot demonstrate deficient performance on this basis.[30]

(b) *Failure to object to bolstering.* Rawls next focuses on certain occasions in which the State bolstered the credibility of witnesses. One of the bolstering episodes occurred during the State's redirect, after Rawls's own counsel had asked the witness (Rawls's son and D. R.'s stepbrother) whether he believed D. R.'s accusations against Rawls simply "because you heard your sister say it?" Thus, objecting to testimony

---

[29] See generally *Parker v. State*, 277 Ga. 439, 441 (2) (588 SE2d 683) (2003) ("it is inappropriate for a prosecutor in a criminal case to discuss in opening statement the evidence she anticipates the defense will present at trial").

[30] See *Pruitt v. State*, 282 Ga. 30, 34 (4) (b) (644 SE2d 837) (2007).

from family members that they believed D. R. would have been inconsistent with trial counsel's stated trial strategy that the family had engaged in a rush to judgment against Rawls, which strategy trial counsel explicitly pursued in his opening statement and closing argument. Accordingly, in light of this reasonable trial strategy, this ground does not support Rawls's claim.

The second bolstering episode involved D. R.'s mother who trial counsel described as "a very difficult witness" to prepare for because she was not aggressively accusing Rawls. Trial counsel explained that his team was unsure whether her testimony would be helpful or harmful, and they were concerned that the mother would be a sympathetic figure whom the jury would believe was manipulated by Rawls. Therefore, his team "spent a great deal of time" preparing strategy for how to cross-examine the mother. In light of these concerns and trial counsel's overall trial strategy, we discern no error. The inquiry in an ineffective assistance claim "focuses on the reasonableness of counsel's conduct from counsel's perspective at the time of trial. Thus, the courts will not second-guess counsel's decisions concerning matters of trial strategy and tactics."[31]

---

[31] (Punctuation omitted.) *Smith v. State*, 261 Ga. App. 25, 27 (3) (581 SE2d 673) (2003). See also *Cruz v. State*, 305 Ga. App. 805, 812 (3) (e) (700 SE2d 631) (2010) (affirming denial of an ineffective assistance claim when trial counsel could

(c) *Failing to call Rawls to testify.* At the hearing on the motion for new trial, Rawls's trial counsel testified that Rawls's trial team discussed the decision extensively and weighed the "pros and cons" of calling Rawls to testify. Counsel noted that Rawls had a bad temper at the time of trial, the State's counsel was "very experienced, very capable . . . a professional cross-examiner . . . [, and] the potential downside was overwhelming in this case." Counsel further explained that after discussing the risks posed by Rawls's testimony, Rawls understood what counsel was telling him and agreed not to testify. Such "[i]nformed strategic decisions do not constitute ineffective legal assistance."[32]

(d) *Failing to object to the counsel for the State's argument as to her personal opinion of the evidence and offenses.* At closing, the State's counsel attacked the defense theory that, based on Rawls's concern for a sexually charged note found in D. R.'s backpack, Rawls was an over-protective father. The State's counsel argued that this view was "a bunch of crap . . . I call it like it is . . . I don't want [a father] who tries to have sex with me when I'm ten years old." Rawls's trial counsel did not

---

not recall the specific reason for a trial decision, and the facts of the case supported the trial court's finding that the decision was reasonable trial strategy).

[32] *Phillips v. State*, 277 Ga. 161, 163-164 (b) (587 SE2d 45) (2003).

14

object at the time but did raise an objection during the jury deliberations. As he explained to the trial court at trial, trial counsel did not object contemporaneously because it was "right at the end of [the State's] argument. It really wasn't time to stand up and object. Plus I'm very reluctant to interrupt counsel in closing argument unless I'm real sure of what I'm doing." This reasoned decision was a reflection of the tactical considerations that counsel routinely weigh throughout trial.

> With the benefit of hindsight, one can always argue that trial counsel's failure to object was something that no reasonable trial lawyer would do. Our task, however, is to determine whether, in the throes of closing argument, no reasonable attorney, listening to the inflection of the speaker's voice and judging the jurors' reactions, would choose to remain silent instead of objecting and calling attention to the improper argument. Here, [Rawls's] attorney reasonably chose silence, and we will not use hindsight to second-guess that decision on appeal.[33]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[33] See *Braithwaite v. State*, 275 Ga. 884, 886 (2) (b) (572 SE2d 612) (2002) (no ineffective assistance because attorney made reasonable strategic decision not to object to the State's improper "golden rule" argument).