**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 9, 2016**

# In the Court of Appeals of Georgia

A16A0236. GRIER v. THE STATE.

BARNES, Presiding Judge.

Following the denial of his motion for new trial, Rafer Grier appeals his convictions on four counts of aggravated child molestation and statutory rape. On appeal, Grier raises several errors related to his access to the victim's records with the Department of Family and Children Services ("DFACS"), arguing that he was entitled to the records pursuant to OCGA § 17-16-1, and that the trial court erred in finding that there was no exculpatory evidence in them. He also contends that his trial counsel was ineffective, that the trial court erred in admitting other acts evidence, and that his rights under the Equal Protection clause were violated. Following our review, we affirm.

Viewed in the light most favorable to the verdict, *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005), the evidence demonstrates that Grier was a Spanish teacher at Stephenson Middle School when he initiated a sexual relationship

with the fourteen-year-old victim, who was in foster care under DFACS custody. The sexual encounters included sodomy and intercourse and occurred multiple times in Grier's classroom, and, on at least one occasion, outside of school, from January 2008 until the victim reported the sexual relationship in April 2008.

1. In two related enumerations, Grier contends that he was entitled to the victim's DFACS records pursuant to OCGA § 17-16-1 et seq., and that the trial court erred in ruling that there was no exculpatory evidence in them.

(a) Grier maintains that the enactment of the reciprocal discovery act expanded discovery to include DFACS records. However, contrary to his assertion, the act does not provide an independent statutory basis for the discovery of DFCS files. *Horne v. State*, 192 Ga. App. 528, 531 (4) (a) (385 SE2d 704) (1989). See *Ellis v. State*, 289 Ga. App. 452, 456 (2) (657 SE2d 562) (2008) ("contrary to [appellant's] contentions, the reciprocal discovery act does not provide an independent statutory basis for the discovery of [the therapist's] files.") Thus, access to the DFACS files "is prohibited except as [otherwise] provided by statute."*Davidson v. State*, 183 Ga. App. 557, 559 (4) (b) (359 SE2d 372) (1987).

To that end, OCGA § 49-5-40 (b) provides that "[e]ach and every record concerning reports of child abuse . . . which is in the custody of the [Department of

Human Services] or other state or local agency, or child advocacy center is declared to be confidential, and access thereto is prohibited except as provided in Code Section 49-5-41 and Code Section 49-5-41.1."

> OCGA § 49-5-41 (a)[(11)]grants access to such records to (a) court, by subpoena, upon its finding that access to such records may be necessary for determination of an issue before such court; provided, however, that the court shall examine such record in camera, unless the court determines that public disclosure of the information contained therein is necessary for the resolution of an issue then before it and the record is otherwise admissible under the rules of evidence.[1]

*Dodd v. State*, 293 Ga. App. 816, 821 (4) (668 SE2d 311) (2008).

In this case, Grier's trial counsel twice subpoenaed the victim's DFACS records, but in each instance, rather than request an in camera inspection by the trial court as mandated by statute, the subpoena directed that the files be sent to the attorney's office. DFACS filed a motion to quash, to which Grier's trial counsel did

---

[1] The court, "by subpoena that is filed contemporaneously with a motion seeking records and requesting an in camera inspection of such records, may make such records available to a party seeking such records when . . . [s]uch motion is filed [and] . . . [s]uch motion is served . . . [o]n all parties to the action . . . and . . . [a]fter an in camera inspection of such records, the court finds that access to such records appears reasonably calculated to lead to the discovery of admissible evidence" OCGA § 49-5-41 (a) (11).

not respond, and ultimately trial counsel never reviewed the victim's DFACS records. Accordingly, because Grier's trial counsel did not follow the statutorily prescribed procedure for obtaining the DFACS files, and given that OCGA § 17-16-1 et seq., does not expand discovery of DFACS records independent of the procedure provided for in OCGA § 49-5-40 (b), this enumeration fails.

(b) The trial court conducted an in camera inspection of the DFACS records after trial and before the hearing on Grier's motion for new trial. In its order denying the motion for new trial, the trial court found that "there is no exculpatory information contained [in the victim's DFACS file], [and] that any information in the DFACS records was either irrelevant or cumulative of other evidence in the case." Grier contends that the trial court erred in finding that there was no exculpatory information in the file. We do not agree.

"A defendant who is denied access to certain information after the court performs an in camera inspection has the burden on appeal of showing both the materiality and the favorable nature of the evidence sought." (Footnote omitted.) *Stephens v. State*, 305 Ga. App. 339, 343 (3) (699 SE2d 558) (2010). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A

4

'reasonable probability' is a probability sufficient to undermine confidence in the outcome." (Citation and punctuation omitted.) *Young v. State*, 290 Ga. 441, 443 (2) (721 SE2d 839) (2012). This Grier has not done. His core contention appears to be that the victim lacked credibility and that the DFACS records chronicled her prior misconduct, and were thus exculpatory. But, as noted by the trial court, this information was merely cumulative of testimony about the victim's misconduct presented at trial. Further, Grier has not met his burden on appeal of demonstrating what excluded material in the DFACS records, which are included in the record on appeal, would have been so material that there is a reasonable opportunity that the outcome of his case would have been different if the records had been disclosed at trial.

Morever, Grier's contention that due process per *Brady v. Maryland*, 373 U.S. 83 (83 SCt 1194, 10 LE 2d 215) (1963), requires that he have access to any exculpatory information regardless of its duplicative nature is also meritless. This Court has found that the trial court's in camera inspection of evidence satisfies the requirements of *Brady* because this procedure balances the public's interest in protecting the confidentiality of those records and the defendant's right to due process. *Davidson v. State*, 183 Ga. App. 557 (359 SE2d 372) (1987). As previously

noted, on appeal Grier has the burden of showing both the materiality and the favorable nature of the evidence sought. *Young v. State*, 290 Ga. at 443 (2). "Evidence is constitutionally material when its exculpatory value is . . . of such a nature that a defendant would be unable to obtain other comparable evidence by other reasonably available means." (Citation omitted.) *State v. Mussman*, 289 Ga. 586, 590 (2) (713 SE2d 822) (2011). Grier has not demonstrated that the evidence he contends was contained in the DFACS file meets this standard, and thus this arguments fails.

2. Grier contends that his trial counsel was ineffective in several regards relating to the DFACS records. He maintains that his trial counsel was ineffective by failing to obtain them, failing to argue that portions of the record were discoverable under OCGA § 17-16-1 et seq.; and failing to object and request the DFACS records when the State's expert testified that he had viewed portions of the records.

> To prevail on a claim of ineffective assistance, Grier
>
> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

6

(Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If he fails to meet his burden on one prong of the two-prong test, then the appellate court need not review the other prong. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012)."We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Grier contends that his trial counsel was ineffective for failing to subpoena the records to the trial court's chambers instead of to counsel's office, following the procedure established in *Davidson*, 183 Ga. App. at 559. However, he did not assert this claim of ineffectiveness in his motion for new trial, nor did the trial court rule on it. Thus, "this aspect of his ineffective assistance claim was waived because it was not raised at the hearing on the motion for new trial." *Thompkins v. State*, 272 Ga. 835, 836 (2) (c) (536 SE2d 747) (2000).

Moreover, even if this claim were not waived, Grier has failed to show how this deficiency prejudiced him "to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different." *Pruitt*, 282 Ga. at 34 (4). The trial court reviewed the records before ruling on the motion

7

for new trial and held that there was "no exculpatory evidence contained therein." Thus, Grier has not shown that the trial court would have reached a different conclusion if it had viewed the records before trial.

(b) Grier also contends that his trial counsel was ineffective for failing to argue that portions of the record were discoverable under OCGA § 17-16-1 et seq., the reciprocal discovery act. However, as noted previously, the act does not provide an independent statutory basis for the discovery of DFCS files. *Horne v. State*, 192 Ga. App. 528, 531 (4) (a) (385 SE2d 704) (1989). A meritless argument provides no basis for an ineffectiveness claim.

(c) Grier contends that his trial counsel was ineffective for failing to object and request a continuance after the State's expert testified that she had viewed portions of the victim's DFACS records. We do not agree.

During Grier's cross-examination of the State's expert, his trial counsel asked her if she had viewed the victim's forensic interview, and she responded that she had. Counsel later asked her if she had reviewed any of the statements that the victim gave to "doctors or nurses when she was examined," and she responded, "I believe in the case file, when she was forensically examined, it was in that report." Grier's counsel

8

then questioned the expert about what documents she had reviewed to prepare for her testimony, and the following exchange took place:

[COUNSEL]: As a part of your preparation to come in and testify about this case . . . were you given access to [the victim's] DFACS records?

[EXPERT]: The full file DFACS, no.

[COUNSEL]: Were you given access to her school records?

[EXPERT]: The full records, I was not.

[COUNSEL]: Any of them from school?
. . .
[EXPERT]: I did not ask. My understanding of testimony is not so much as to fact in this particular case, but, rather, my experience in the area of child sexual abuse. If I were to have been asked to assess a bucket load of records, I would be happy to do so. . . . [I]n this particular case, I was given a copy of discovery, and in that discovery was included the areas of the investigation, a synopsis of the general medical, the forensic interview, the steps of when the case was disclosed, when the outcry was made and as such. *And so, no, I did not ask for the full DFACS records nor did I ask for the full school records*. (emphasis supplied.)

Contrary to Grier's assertion, the expert's testimony did not reveal that she had access to any records other than those supplied to him in discovery, or that she had

9

viewed the DFACS records in whole or part. Further, Grier did not subpoena the expert for the hearing on his motion for new trial to ascertain whether she viewed any DFACS records. Trial counsel testified that he did not recall his reasoning for not objecting to the testimony or requesting a continuance. He testified, "I don't know whether at the time I took that to mean that she didn't ask for or didn't receive any of the records at all or whether at the time I'm thinking that she had gotten some of the records but not . . . the full records. I just don't remember what I was thinking at that time."

> We need not determine whether counsel's performance was deficient if we determine that the prejudice prong is not satisfied in any event. The general requirement is that the defendant must affirmatively prove prejudice, because attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. Consequently, mere speculation on the defendant's part is insufficient to establish *Strickland* prejudice.

(Citations and punctuation omitted.) *Pierce v. State*, 286 Ga. 194, 197-198 (4) (686 SE2d 656) (2009).

In this case, Grier's mere speculation that the State's expert *may* have reviewed DFACS records and his trial counsel's failure to object thereto does not demonstrate

10

prejudice to the point that a reasonable probability exists that the outcome of his trial would have been different.

3. Grier maintains that the sodomy statute is unconstitutionally vague, because the statute was never amended to reflect the redefinition of the offense in *Powell v. State*, 270 Ga. 327, 335 (510 SE2d 18) (1998). The statute still states that "[a] person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another," OCGA § 16-6-2 (a) (1), but Grier argues that because the court in *Powell* decriminalized sodomy between consenting adults, a person of ordinary intelligence would be misled by the statute into thinking that anyone engaging in any act of sodomy, regardless of the other participant's age, is committing a crime. He further argues that under OCGA § 16-6-2, the sentence for a conviction of engaging in an act of sodomy with someone younger than 16 is 1 to 20 years with the possibility of parole or probation, in contrast to the sentence for aggravated child molestation based on an act of sodomy. OCGA §§ 16-6-4 (c), (d) and 17-10-6.1(b) (2) (C) provide that the sentence for a conviction of aggravated child molestation based on an act of sodomy with someone younger

than 16 is a mandatory minimum of 25 years to life imprisonment, followed by life on parole, and none of the prison time in the sentence can be probated or paroled.[2]

However, our Supreme Court has exclusive appellate jurisdiction over "[a]ll cases . . . in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question." Ga. Const. 1983, Art. VI, Sec. VI, Par. II (1). This Court's jurisdiction over constitutional questions does not reach cases that "'involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of [this Court] or the Supreme Court of the United States.' [Cit.]" *Watson v. State*, 283 Ga. App. 635, 637 (2) (642 SE2d 328) (2007). Moreover, we note that our Supreme Court has instructed that challenges to the constitutionality of a statute "'must be made at the first opportunity, and it is too late to raise such question after a guilty verdict has been returned by the jury.' [Cit.]" *Lacey v. State*, 270 Ga. 37 (1) (507 SE2d 441) (1998). See also *Glean v. State,* 268 Ga. 260, 263 (2) (b) (486 SE2d 172) (1997). Grier did

---

[2]OCGA § 16-6-2 (d) (2) provides an exception to the mandatory minimum felony sentencing if the victim in an aggravated child molestation conviction based on sodomy is at least 13 and younger than 16 and the defendant is 18 or younger and not more than 4 years older than the victim. Under those circumstances, the crime is a misdemeanor and the sentence is not subject to the restrictions on probation and parole set out in OCGA § 17-10-6.1.

12

not raise this constitutional issue before the jury returned its verdict, and this court has no jurisdiction over this issue. This enumeration thus fails.

Further, while Grier argues his trial counsel were ineffective for failing to argue that OCGA § 16-6-2 was unconstitutional, Grier also did not argue that issue in his motion for new trial, and did not examine Grier's trial counsel about it. Allegations of ineffective assistance that were not raised before the trial court are procedurally barred. *Seese v. State*, 235 Ga. App. 181, 183-184 (3) (509 SE2d 94) (1998). See *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999) ("An error of law has as its basis a specific ruling made by the trial court.") Accordingly, we do not consider this ineffective assistance claim.

4. Grier also asserts that his trial counsel was ineffective "for failing to understand how *Powell*[, 270 Ga. 327,] impacted the crime of aggravated child molestation" in Grier's case. Our Supreme Court in *Powell* limited the crime of sodomy to acts committed in public, for money, or with someone under the age of consent. 270 Ga. at 335. Grier maintains that after *Powell*, the crime of aggravated child molestation based on an act of sodomy under OCGA § 16-6-4 (c) and the crime of sodomy based on an allegation that the victim was a child under 16 under OCGA § 16-6-2 are identical and redundant. Therefore, he argues, he should have been

13

punished under the less-severe sentencing provisions of the sodomy statute. He maintains that his trial counsel was ineffective for failing to make that argument, and also for failing to a request a charge on sodomy as a lesser included offense.

Grier was represented by two attorneys at trial. When asked about the application of *Powell* to Grier's case, one trial counsel testified that

> in my mind at the time, sodomy was not applicable [to] . . . Grier's case. It was only applicable in the context of it's kind of a sub definition of the aggravated child molestation statute. . . . I saw aggravated child molestation and sodomy as two completely separate and distinct offenses as defined in the code, and it never occurred to me to ask for sodomy as a lesser included offense of child molestation.

The other trial counsel testified that in hindsight he should have asked for a lesser included offense of sodomy, but he would not have thought of that argument at trial because he did not recognize the merits of the argument then.

> The standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense. [Grier] has not cited, and we have not found, any case addressing a similar . . . challenge to OCGA § [§16-6-2 and 16-6-4]. Trial counsel's failure to raise this novel legal argument does not amount to ineffective assistance of counsel.

14

(Footnotes and punctuation omitted.) *Hughes v. State*, 266 Ga. App. 652, 655 (3) (a) (598 SE2d 43) (2004).

5. Grier also maintains that the trial court erred by admitting a portion of an out-of-court statement that he gave to a detective recounting that a female student had once falsely accused him of touching her, arguing that the statement was inadmissible evidence of a prior bad act that warrants a reversal of his convictions. We do not agree.

Before the detective testified, the jury was excused. During an ensuing bench conference, Grier requested that his taped statement be stopped before he mentioned that other kids had made false allegations about him, including "one girl said I held her after class and touched her inappropriately." He argued that the statement would be more prejudicial than probative. Grier acknowledged that he had been provided with the statement the week before his trial began, but maintained that the State had not filed notice of its intention to introduce evidence of prior bad acts and was therefore foreclosed from offering the evidence. The trial court overruled his objection and allowed the State to play the entire statement.

"[T]he admission of evidence is a matter which rests largely within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion."

15

(Citation omitted). *Barclay v. State*, 306 Ga. App. 766, 766 (702 SE2d 907) (2010). In its order denying Grier's motion for new trial, the trial court found that this portion of Grier's statement was not prior bad act evidence subject to analysis under OCGA § 24-4-404 (b),[3] but was rather a declaration against penal interest and admissible under OCGA § 24-8-801 (d) (2).[4]

"The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Rivera v. State*, 295 Ga. 380, 382 (761 SE2d 30) (2014). Pretermitting whether Grier's statement that he had been falsely accused constituted prior bad act evidence under OCGA § 24-4-404 (b) and should have been excluded, we find this enumeration to be without merit. Under the highly probable test,

---

[3]OCGA § 24-4-404 (b) provides:
Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[4]OCGA § 24-8-801 (d) (2) (A) provides in pertinent part that "[a]n admission is a statement offered against a party which is. . . [t]he party's own statement, in either an individual or representative capacity."

16

a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error. Having reviewed the transcript of the proceedings below, we find that . . . the [admission of the] statement does not constitute reversible error, since, viewing the posture of the entire record, we find that it is highly probable that [its admission] did not contribute to the verdict.

(Citations and punctuation omitted.) *Lowther v. State*, 263 Ga. App. 282, 283 (1) (587 SE2d 335) (2003) (admission of defendant's statement to officer that he would not have been alone with the 8-year-old victim because he learned his lesson after he ran off with a 15-year-old girl and got her pregnant did not warrant reversal under highly probable test.).

6. Grier last contends that his rights under the Equal Protection Clause of the United States Constitution were violated by the grossly disproportionate and thus cruel and unusual sentence for the crime of aggravated child molestation by sodomy, particularly compared to the much lesser sentence for the crime of sodomy. He further argues that his equal protection rights were violated because similarly situated people — those who commit the act of sodomy with someone younger than 16 — may be charged under either OCGA § 16-6-2 or OCGA § 16-6-4 (c), resulting in widely disparate sentences. Finally, he argues that because his fundamental right to equal

17

protection is implicated by this sentencing disparity, the State must demonstrate a compelling state interest that requires the radically different sentences for the similar crimes.

Our Supreme Court previously considered the slightly different argument that "there is no rational basis for treating child molestation based on an act of sodomy differently from child molestation based on other acts, and the different treatment [for the act of sodomy] violates . . . equal protection and due process rights under the United States and Georgia Constitutions." *Odett v. State*, 273 Ga. 353, 354 (2) (541 SE2d 29) (2001). The appellant in *Odetts* had argued that "in light of *Powell*, there is no rational basis for treating child molestation based on an act of sodomy differently from child molestation based on other acts, and the different treatment violates his equal protection and due process rights under the United States and Georgia Constitutions." Id. Our Supreme Court observed that *Powell* did not hold that the right to privacy protects sodomy generally, that sexual conduct with a minor is not protected by any privacy right, and that, "[a]s the statute at issue does not affect a fundamental right or a suspect class, to survive the appellant's constitutional

18

challenge [OCGA § 16-6-4 (c)] need only bear a rational relationship to some legitimate state purpose." Id. It concluded that the statute met this standard.

Here, Grier compares the aggravated child molestation statute by sodomy to the general sodomy statute, but he previously argued that OCGA § 16-6-2 too broadly defines sodomy between anyone as a criminal because it fails to recognize that under *Powell*, the criminalization of private, consensual, non-commercial sodomy between people over the age of consent is unconstitutional. If, under *Powell,* the State cannot convict someone for criminal sodomy unless the act was either public, performed for money, or performed on someone under the age of consent, and OCGA § 16-6-2 (a) (2) defines aggravated sodomy as involving a victim younger than 10,[5] then Grier could not even be convicted under that statute with an offense involving a 14-year-old victim. The only statute that permissibly criminalizes that conduct with a victim of that age is OCGA § 16-6-4 (c) and (d), and thus Grier has no valid equal protection argument.

Further, even if, as Grier argues, he could still be charged under either the sodomy statute or the child molestation statute and that his equal protection rights

---

[5]The offense of aggravated sodomy carries the same sentence as an offense of aggravated child molestation. See OCGA §§ 16-6-2 (b) (2), 16-6-4 (d).

were violated because the same act of consensual sodomy is punished differently under those statutes,

> [u]nder OCGA § 16-1-7 (a), "when the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime." Therefore, as [Grier's] conduct satisfied the elements of aggravated child molestation, the argument that he should have been sentenced for the lesser crime of simple sodomy is unavailing. The State is not required to prosecute only a lesser offense committed. It may prosecute the defendant under any or all statutes that fit the defendant's conduct. [Grier's] arguments that the . . . sodomy statute conflicts with the aggravated child molestation statute, and that his equal protection rights were violated as a result, are equally without merit. The . . . sodomy statute is irrelevant here as Grier was not charged with that crime. [He] was charged with aggravated child molestation and his actions satisfied the elements of that offense. See OCGA § 16-6-4 (c).

*Hunter v. State*, 263 Ga. App. 747, 748-749 (3) (589 SE2d 306) (2003).

Regarding Grier's claim that the mandatory sentence for aggravated child molestation constitutes cruel and unusual punishment based on the disparity between the sentences for sodomy and aggravated child molestation, first, accepting without deciding that Grier's argument that the current sodomy statute does not comport with *Powell*, then he could not be charged under the sodomy statute with criminal conduct for committing the act of sodomy against someone older than 10.

20

Second,

> [i]f the sentence falls within the statutory range of punishment set by the legislature, the presumption is that the sentence does not violate the Eighth Amendment, and the presumption remains until a defendant sets forth a factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience.

(Punctuation omitted) *Jones v. State*, 325 Ga. App. 845 (1) (755 SE2d 238) (2014). Grier has failed in so demonstrating. See *Pepe-Frazier v. State*, 331 Ga. App. 263, 272 (3) (c) (770 SE2d 654) (2015) (no ineffective assistance for failing to object to appellant's life sentence for one act of oral sex with 14-year-old because it "does not raise a threshold inference of gross disproportionality").

*Judgment affirmed. Boggs and Dillard, JJ., concur.*

21