**FIFTH DIVISION
MCFADDEN, P. J.,
HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 25, 2025**

# In the Court of Appeals of Georgia

A25A1222. JOHNSTON v. THE STATE.

HODGES, Judge.

A jury found Richard Johnston guilty of child molestation, evidence tampering, and two counts of sexual exploitation of children stemming from crimes committed against his girlfriend's then 13-year-old daughter, E. R. G.[1] Johnston now appeals from

---

[1] The jury was unable to reach a unanimous verdict on a charge of rape. The trial court declared a mistrial, but no order of nolle prosequi was entered. The trial court denied Johnston's motion for new trial, and he initially appealed to this Court in Case No. A24A0253. We dismissed his direct appeal for lack of jurisdiction pursuant to *Seals v. State*, 311 Ga. 739 (860 SE2d 419) (2021), disapproved in part on other grounds by *Gonzales v. State*, 315 Ga. 661, 665 (1) (b), n. 7 (884 SE2d 339) (2023), because, absent an order of nolle prosequi, the judgment was not final and Johnston had failed to follow interlocutory appeal procedures. See OCGA § 5-6-34 (a) (1), (b). After remittance to the Superior Court of Bulloch County, the State sought an order of nolle prosequi on the rape count and the trial court entered a final judgment, reaffirming its earlier denial of Johnston's motion for new trial. Johnston then filed this timely appeal.

the denial of his motion for new trial. He argues that the trial court erred in in granting a motion in limine that prevented him from questioning the victim about the source of unknown DNA found on her person and in excluding evidence of the victim's alleged prior drug use. He also contends that he received ineffective assistance of trial counsel in several respects. For the reasons the follow, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence adduced at trial shows that Johnston was living with E. R. G. and her family while E. R. G. was in middle school. In September 2018, E. R. G. went to Taco Bell and a gas station with Johnston and others in his family. Johnston bought alcohol, including beer for E. R. G. The group then sat outside at their house for awhile, and E. R. G. testified that she drank four beers. After the others left and just E. R. G., her twin brother, and Johnston remained at the home, they began talking about drugs. E. R. G. asked if Johnston had a "happy pill," because she felt depressed. Johnston gave her half of a pill. She did not know what kind of pill it was.[3] E. R. G. testified that she had never had alcohol before,

---

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979); *Brock v. State*, 373 Ga. App. 832 (1) (910 SE2d 253) (2024).

[3] At trial, E. R. G.'s mother testified that Johnston took Klonopin, which he typically broke in half, for his "anger" issues.

and she felt "tipsy" and "threw up." Because she was "too drunk to even stand," her brother helped her into the house, and she went to bed. She later felt someone "crawl in [her] bed and take [her] tights and panties off." She kept her eyes closed and testified that she was essentially asleep while a man put his "private part inside" of her. He then left the room.

When he returned, she looked to see who it was, and saw Johnston. She testified that when Johnston came back, he had his cell phone and she saw the camera "flash" when he took photographs of her, touched her private parts, and then left. E. R. G.'s sister was in her own bedroom and saw Johnston leave E. R. G.'s room and "it kind of worried [her] a little bit." E. R. G. got up and went to the bathroom, then came into her sister's room, "distraught," and told the sister that Johnston had raped her.

The sister woke the girls' mother and told her what had happened. The mother attempted to access Johnston's phone, which usually was unlocked. This time, however, it was locked. Johnston chased the mother around the house attempting to retrieve the phone. He retrieved the phone after he pushed the mother into the refrigerator and she threw the phone to get Johnston away from her. He then attempted to disassemble the phone to "take something out of it." After Johnston

went into the bedroom to change clothes, the mother took the phone and gave it to police, whom E. R. G.'s sister had called. When the mother asked Johnston why he had "hurt [her] baby[,]" he "continuously told [her] that pictures were a far cry from rape."

Investigators accessed Johnston's phone and found photographs taken on the date and time at issue showing a "pubescent female vagina." The photographs were retrieved from the phone's "trash can" or "recycle bin," which a special agent with the Georgia Bureau of Investigation's ("GBI") Child Exploitation and Computer Crimes unit testified indicated Johnston had attempted to remove them. On appeal, Johnston does not contest the sufficiency of the evidence against him.

1. Johnston argues that the trial court erred in granting the State's motion in limine, which prevented him from questioning E. R. G. about whether unknown male DNA found on her person had come from her boyfriend. We find no error.

"We review the trial court's denial of a motion in limine for an abuse of discretion." *Rawls v. State*, 315 Ga. App. 891, 892 (1) (730 SE2d 1) (2012).

Pertinent to this contention, as will be discussed more fully below, the evidence showed that early in the morning following the incidents, the mother took E. R. G. to

get a sexual assault exam. The results showed male DNA that did not match Johnston's. The trial court permitted the jury to hear the testimony of a GBI expert in forensic DNA analysis and forensic biology, who testified that the DNA evidence from external swabs of E. R. G.'s vagina in her sexual assault kit showed male DNA that did not belong to Johnston. The expert also testified that penis swabs from Johnston showed a mixture of DNA from "at least" two individuals, but the match with E. R. G. was "inconclusive."

The trial court, however, refused to allow Johnston to question E. R. G. about her alleged boyfriend, finding that such questioning was impermissible under Georgia's Rape Shield Statute. That statute provides, in pertinent part, that:

> evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section.

OCGA § 24-4-412 (a). The statute also provides, inter alia, that in prosecutions for rape and child molestation, "the court *may* admit the following evidence relating to the past sexual behavior of the complaining witness[:] . . . [e]vidence of *specific instances* of a victim's or complaining witness's sexual behavior, if offered to prove

that someone other than the defendant was the source of semen, injury, or other physical evidence . . . ." (Emphasis supplied.) OCGA § 24-4-412 (b) (1).

Johnston argues that because the State presented expert testimony indicating that when a third party is "involved" in a single-family home, statistics show a child is more likely to be abused by that third party, the trial court should have allowed him to ask E. R. G. if the source of the unknown male DNA was her boyfriend.

We note that the expert's testimony was given in the context of a question specifically asking about "the victim's *mother's boyfriend*[.]" (Emphasis supplied.) Johnston has pointed to no evidence that the *victim's boyfriend* was "involved in [their] single-family home." Johnston further fails to provide any record citations to any proffer he may have made of "specific instances" of E. R. G.'s alleged sexual behavior with a particular boyfriend on or around the date in question, as required by OCGA § 24-4-412 (b) (1). See generally *Bearfield v. State*, 305 Ga. App. 37, 41 (2) (699 SE2d 363) (2010) (finding defendant failed to show error by the record in child molestation case where he claimed evidence was wrongly excluded, but did not introduce into evidence the medical report needed to support his contention); see also *McDaniel v.*

*State*, 367 Ga. App. 376, 379 (d) (885 SE2d 245) (2023) (reiterating that this Court will not cull the record in search of error on behalf of any party).

> Where the error alleged is that certain evidence has been wrongfully excluded, the rule is well settled that there must have been a proffer or offer of a definite sort so that both the trial court and the appellate court can know whether the evidence really exists. In the absence of such a proffer, the assignment of error is so incomplete as to preclude its consideration by this [C]ourt.

(Citation omitted.) *State v. Winther*, 282 Ga. App. 289, 291 (638 SE2d 428) (2006); accord *Bearfield*, 305 Ga. App. at 41 (2).

Johnston instead has presented nothing more than the bare-bones contention that he should have been able to ask generally about sexual relations with E. R. G.'s boyfriend. As the trial court determined, this amounted only to an impermissible attempt to "show the victim's reputation for nonchastity or sexual mores contrary to the community standards." See generally *Atkins v. State*, 304 Ga. 240, 245 (3), 249 (3) (818 SE2d 567) (2018) (finding no error where trial court prohibited defendant from seeking testimony about victim's prior sexual activity because defendant failed to show "that there was specific relevant evidence contained within that history"). Further, given that the trial court allowed extensive testimony that the DNA evidence

was not a match for Johnston's DNA, he has shown no harm. See *Whitelock v. State*, 349 Ga. App. 28, 36 (1), n. 24 (825 SE2d 426) (2019) ("To prevail on appeal, an appellant must show harm as well as error in the exclusion of evidence.") (citation and punctuation omitted). We find no abuse of discretion.

2. Johnston contends that the trial court also erred in its pretrial exclusion of evidence of E. R. G.'s alleged prior drug use.

We review the trial court's exclusion of this evidence for abuse of discretion. *Rawls*, 315 Ga. App. at 892 (1).

In support of this enumeration, Johnston points to a singular reference to "pills" in records from the Department of Family and Children Services ("DFCS").[4] Those records contain what appears to be a transcription of an investigating case manager's e-mail that says E. R. G. "has been seen at school (by other students) with pills."

---

[4] The State admits in judicio that it inadvertently sent the DFCS records containing this report to defense counsel in discovery. Johnston does not argue that he ever attempted to access the records in accordance with our law. See *Grier v. State*, 339 Ga. App. 778, 779-780 (1) (a) (792 SE2d 737) (2016) (noting that access to DFCS files is prohibited except as provided by statute). The trial court determined that the records were confidential and sealed them prior to the hearing on Johnston's motion for new trial. See OCGA §§ 49-5-40, 49-5-41, 49-5-41.1. It does not appear that Johnston contested this finding.

On appeal, Johnston argues that this evidence "was sufficient for the defense to assert that any pills [E. R. G.] took were not obtained from [Johnston]. And the issue was relevant as to whether she had developed a tolerance to the sort of substance that was given to her on the night of the alleged rape." Johnston, however, points to no evidence regarding what the "pills" in the DFCS record were or who allegedly had seen and reported that E. R. G. had pills at school; further, he points to no proffer or testimony from the case manager who wrote the DFCS report or e-mail. The trial court found that the DFCS records were "hearsay in its rankest form" and, because nothing linked them to the pill Johnston gave E. R. G. on the night at issue, impermissible character evidence.

In the absence of any record citation to testimony or a proffer from the case manager or the person who allegedly saw E. R. G. with pills at school, as the trial court concluded, the report contained hearsay within hearsay. Hearsay within hearsay is inadmissible unless each part conforms with an exception to the hearsay rule. OCGA § 24-8-805. Johnston makes no argument that any such exception applies. Absent such a showing, the trial court did not err in finding the report inadmissible hearsay. See *Tuggle v. Rose*, 333 Ga. App. 431, 434 (2) (773 SE2d 485) (2015) (finding that, even

9

if investigator's report were admissible under the business records exception to the hearsay rule, a summary of a student's statement in the report still was hearsay and inadmissible); see generally *In the Interest of A. G. I.*, 246 Ga. App. 85, 88 (2) (c) (539 SE2d 584) (2000) (finding that "the portion of the report relied on by DFCS contains hearsay statements purportedly made by [juvenile's] mother to the guardian[, and] . . . any reliance on hearsay in the report would have been error").

3. Finally, Johnston asserts that his trial counsel rendered ineffective assistance in several respects. We disagree.

> To prevail on an ineffective assistance claim, Johnston

> was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable. . . . [W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

(a) In connection with the enumeration discussed in Division 1, supra, regarding the unknown male DNA found on E. R. G.'s person, Johnston argues that his trial counsel rendered ineffective assistance because he neither "explore[d] the purported victim's boyfriend as a source" for that DNA nor asked about the statistical likelihood that E. R. G.'s boyfriend — rather than Johnston — was the source of the DNA.

Johnston, however, fails to show that he made any proffer at the hearing on his motion for new trial regarding what the expert testimony regarding this statistical likelihood would have shown, had his counsel questioned the State's expert on this point.[5]

> The failure of trial counsel to employ evidence cannot be deemed to be "prejudicial" in the absence of a showing that such evidence would have been relevant and favorable to the defendant. Because appellant failed to make any proffer of the . . . testimony, it is impossible for appellant to show there is a reasonable probability the results of the proceedings would have been different.

(Citation and punctuation omitted.) *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995). Johnson has failed to show that he was prejudiced by his trial

---

[5] We note that Johnston does not argue that his counsel should have called a defense expert to testify on this issue.

11

counsel's failure to produce expert testimony on this statistical issue. Thus, the trial court did not err in finding he failed to show his counsel rendered ineffective assistance.

(b) In connection with Division 2, supra, regarding E. R. G.'s alleged prior use of pills, Johnston summarily asserts that to the extent the proffer was insufficient, his counsel rendered ineffective assistance. This argument likewise attempts to rely only on hearsay evidence from the DFCS report, containing no real argument, no citation to legal authority, and no specific citation to the record, in contravention of Court of Appeals Rule 25 (a) (7), (d) (1) (i); *Grimes v. State*, 362 Ga. App. 242, 245 (2) (867 SE2d 843) (2022) (finding claims abandoned where appellant did not support them with argument, citation to the record, or legal authority). Therefore, this enumeration is deemed abandoned. Id.

(c) Johnston next argues that his trial counsel rendered ineffective assistance by making an inadequate proffer at the motion in limine hearing. He contends trial counsel should have proffered records from DFCS that showed a prior, similar allegation E. R. G. made against one of her mother's ex-boyfriends. Johnston argues that, if admitted, the DFCS records would have shown E. R. G. falsely accused the

former boyfriend of taking flash photographs after molesting her and that she used knowledge from that earlier incident to similarly falsely accuse Johnston of taking flash photographs of her following the sexual crimes at issue here.[6]

We note at the outset that Johnston provides no record citations to the proffer that he claims was inadequate. We will not cull the record in search of error on behalf of any party. *McDaniel,* 367 Ga. App. at 379 (d). Further, pretermitting whether the trial court was correct in its analysis of how a court should assess a contention regarding prior false claims, it determined that the DFCS records were hearsay and could not be admitted at trial. See *Alvarado v. State*, 360 Ga. App. 113, 120 (2) (c), n. 8 (860 SE2d 886) (2021) ("[W]e will affirm a trial court if its judgment is right for any reason."). On appeal, Johnston presents no argument and points to no evidence that the DFCS records were anything other than inadmissible hearsay; neither E. R. G., nor the school principal, nor the unidentified person who reported the prior flash photography incident testified at the hearing on Johnston's motion for new trial. Nor

---

[6] Although the Rape Shield Statute provides that "evidence relating to the past sexual behavior of the complaining witness shall not be admissible," OCGA § 24-4-412, our Supreme Court has recognized that the Rape Shield Statute "does not categorically bar prior-accusation evidence." *Gallegos-Munoz v. State*, 319 Ga. 803, 812 (2) (c) (906 SE2d 711) (2024).

does Johnston argue that trial counsel was ineffective in failing to contest the hearsay ruling. Johnston has failed to carry his burden of showing that trial counsel's performance was deficient or prejudiced his case, and the trial court did not err. See *Hill*, 291 Ga. at 164 (4).

(d) Johnston asserts that the prosecutor made a "future dangerousness" argument and that his trial counsel rendered ineffective assistance in failing to object or move for a mistrial. We find no error.

In closing, the State argued the following:

Ladies and gentlemen, you are the gatekeepers. You are the conscience and voice of this community. . . . [W]e tell our victims to come forward, to make it known, to speak out and they will be believed. You ultimately control what conduct you allow in this community. You have the opportunity here today to say this is not acceptable. We will not tolerate this. You send a message, this type of reprehensible behavior, this type of unfathomable conduct will not be conducted. Why is it important? What message do we send to the children of our community? What message do we send to the sexual predators of our community? Your verdict controls that.

Our courts have determined that:

It is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not

14

guilty, a defendant poses a threat of future dangerousness. . . . A prosecutor argues future dangerousness when the prosecutor asserts there will be more victims if the defendant is not found guilty, or the community or witnesses will be endangered if the defendant is not found guilty.

(Citations and punctuation omitted.) *Fulton v. State*, 278 Ga. 58, 64 (8) (597 SE2d 396) (2004). The State's closing argument, as recounted above, neither asserted nor implied that Johnston posed a threat of future danger to the community or that he would victimize or endanger others if not found guilty. This part of the closing argument instead focused on sending a message to other sexual predators and to the community itself that this type of behavior would not be tolerated and that victims could come forward and be believed. See *Hunter v. State*, 282 Ga. App. 355, 357 (4) (638 SE2d 804) (2006) (finding no error and no impermissible references to future dangerousness where State argued to jury "'you can protect the children right now, the buck stops here,' that given [defendant's] efforts to 'groom' a second victim for future molestation, 'only you can make it stop,' and that 'with your verdict, you really can send a message'"); *Davis v. State*, 266 Ga. 801, 804 (8) (471 SE2d 191) (1996) (finding "[i]t is not improper for a prosecutor to appeal to the jury to convict for the

15

safety of the community, or to stress the need for enforcement of the laws and to impress on the jury its responsibility in that regard") (citation and punctuation omitted). "We do not interpret these statements as an impermissible comment on [Johnston's] future dangerousness. Instead, the comments were proper because they were intended to appeal to the jury to convict [Johnston] for the safety of the community . . . and to emphasize to the jury its responsibility to enforce the law." *Jones v. State*, 318 Ga. App. 342, 346 (3) (a) (i) (733 SE2d 400) (2012). Since the challenged comments were permissible, counsel's failure to object was not deficient performance, "[a]nd the failure to make a meritless objection cannot be evidence of ineffective assistance." (Citation and punctuation omitted.) Id. at 347 (3) (a) (i).

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*