**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: September 17, 2024

S24G0214. GALLEGOS-MUNOZ v. STATE.

ELLINGTON, Justice.

We granted certiorari in this sex-offense case to consider the rules governing the admissibility of evidence concerning a victim's allegedly false accusation of sexual misconduct against a person other than the defendant.[1] The precise issue presented in this case is whether, when a defendant wishes to adduce such evidence, the trial court errs in excluding the evidence, based solely on the trial court's determination that the evidence does not show a reasonable probability that the alleged victim's prior accusation was false. We conclude that decisional law predating the effective date of Georgia's

---

[1] We refer to such evidence as "prior-accusation evidence" for the sake of brevity. An alleged victim's accusations against the defendant and against the other person or persons may have occurred in any chronological order.

current Evidence Code (the "2013 Evidence Code") that required a trial court to admit prior-accusation evidence, following a threshold determination made by the trial court outside the presence of the jury that a reasonable probability of falsity existed,[2] does not apply to prosecutions governed by the 2013 Evidence Code. Instead, the rules set forth in the 2013 Evidence Code govern the admissibility of such evidence, as this Court held in *State v. Burns*, 306 Ga. 117 (829 SE2d 367) (2019) ("*Burns II*").

In this case, the trial court determined after an evidentiary hearing that the prior-accusation evidence that Gallegos-Munoz wished to adduce did not show a reasonable probability that the alleged victim's prior accusation was false. The trial court later denied Gallegos-Munoz's motion for a new trial, in which he argued that, in light of *Burns II*, the prior-accusation evidence he wished to

---

[2] See *State v. Burns*, 306 Ga. 117, 119 (1) (829 SE2d 367) (2019) (In *Smith v. State*, 259 Ga. 135, 137 (1) (377 SE2d 158) (1989), "we announced that evidence of a prior false allegation was admissible during trial following a threshold determination made by the trial court outside the presence of the jury that a reasonable probability of falsity exists." (citation and punctuation omitted)).

2

adduce should have been admitted under OCGA § 24-4-403 ("Rule 403"). The Court of Appeals affirmed Gallegos-Munoz's conviction and the denial of his motion for a new trial. See *Gallegos-Munoz v. State*, 369 Ga. App. 277 (893 SE2d 176) (2023). Because both the trial court and the Court of Appeals relied on the outdated probable-falsity threshold test, we vacate the Court of Appeals's judgment and direct the Court of Appeals to vacate the trial court's ruling and remand for reconsideration of Gallegos-Munoz's motion for a new trial under the applicable evidentiary standards.

1. The record shows the following facts. Gallegos-Munoz was arrested in 2015 after his girlfriend's 12-year-old daughter, J. R., made an outcry to a teacher that Gallegos-Munoz had touched her breast and between her legs and had raped her twice. See *Gallegos-Munoz*, 369 Ga. App. at 278. On March 2, 2016, Gallegos-Munoz was indicted in Gwinnett County on two counts of rape and one count of child molestation. Before trial, Gallegos-Munoz moved for leave to introduce "prior false accusation evidence," specifically, allegations of sexual abuse that J. R. had made against her biological father in

3

June 2016. In the motion, Gallegos-Munoz asserted that "J. R. has since apparently recanted her accusation of sexual abuse against" her father and that no criminal investigation was pursued.

At a September 2018 hearing on Gallegos-Munoz's motion, J. R.'s mother and three law enforcement officers testified about J. R.'s allegations about her father's sexual abuse. J. R.'s mother testified that J. R. told her that J. R.'s father had "touched her private part"; that "[J. R.] called the police"; that a patrol officer came to her house to take a report about J. R.'s allegation, and the officer then told her that law enforcement "could not continue with the case because if the case was before a judge he would just throw out the case because there was not enough proof"; that J. R.'s mother "[did not] know if an investigation was done or not"; that she asked J. R. if it was true and J. R. said, "yes;" that, she "ask[ed] [J. R.] if she made up [the story about her father] after the police said there wasn't enough evidence to go forward" and that J. R. said "[n]othing"; and that J. R. never told her "that she made up the story about her father."

A detective testified at the hearing that his unit supervisor initially assigned J. R.'s case to him but that he did not speak with J. R. or otherwise investigate the case because, within days, the supervisor told him "that he was contacted by the complainant again" a few days after the initial report and that the family "did not wish to proceed[,]" so the detective "could unfound the case." The unit supervisor testified that he spoke with J. R.'s mother by telephone and that she indicated that "[J. R.] was in counseling" and that the family "just wanted to handle it like that and not pursue any sort of criminal investigation regarding [the] incident [with J. R.'s father]." The unit supervisor testified that, after his conversation with J. R.'s mother, no additional steps were taken to follow up on the patrol officer's report. The unit supervisor testified that J. R.'s mother "didn't tell [him] that [J. R.] had said it didn't happen" and "did not indicate . . . anything" about whether "she believed [J. R.'s allegation]."

Finally, an investigator testified that he worked on the case against Gallegos-Munoz. During a pretrial interview, J. R. told the

5

investigator "about a case that she had previously had where there was an outcry to the Gwinnett County Police Department against her father"; that she only talked to one officer about it; that "she expected to hear from somebody" but "never heard another thing about that case"; that she "never knew what had happened to that case" against her father; and that she "never wanted the case dropped." J. R. related to the investigator that her mother and "all of her family members . . . didn't want her to proceed with either [the] case" against her father or the case against Gallegos-Munoz, and that her relationship with her mother had become "strained" during that time period.

Based on the witnesses' testimony, the State argued that there was "actually no evidence of falsity" and that, consequently, Gallegos-Munoz had not met his threshold burden of supporting a determination of falsity. In an order entered on December 3, 2018, the trial court denied Gallegos-Munoz's motion to admit the prior-accusation evidence, referencing "the reasons noted by the [c]ourt in its oral ruling at the conclusion" of the September 2018 hearing. At

the hearing, the trial court had summarized J. R.'s mother's testimony as follows: J. R. "came to her and said my daddy touched my private areas[,]" the police shut the investigation down, and J. R.'s mother "went back and asked [J. R.] if it really happened" and J. R. "basically said nothing, didn't deny it, didn't confirm it." The trial court determined, "at least on [the] limited issue" of whether J. R. recanted, as alleged in Gallegos-Munoz's motion, the trial court did not find J. R.'s mother "to be very credible[.]" The trial court determined there was not "enough evidence . . . to say with anything remotely resembling a reasonable probability that the child made a false allegation against her father." Consequently, the trial court ruled, Gallegos-Munoz was not able to establish with reasonable probability that the victim made a false accusation of sexual misconduct against someone else, and for that reason, he was barred from introducing such evidence, citing *Smith v. State*, 259 Ga. 135, 136-137 (1) (377 SE2d 158) (1989), and *Osborne v. State*, 291 Ga. App. 711, 712-713 (2) (662 SE2d 792) (2008).

After a six-day trial, a jury found Gallegos-Munoz guilty of one

7

count of child molestation. The court sentenced Gallegos-Munoz to serve 19 years in prison followed by one year on probation. Gallegos-Munoz filed a motion for a new trial, arguing that the trial court applied the wrong analysis to his motion to admit J. R.'s allegation of sexual misconduct by her father. In his motion, Gallegos-Munoz argued that this Court's decision in *Burns II* eliminated the requirement under *Smith* and other earlier case law that a trial court make a threshold finding that a victim's prior accusation of sexual abuse was probably false. He argued that, under *Burns II*, such evidence was subject to Rule 403, which requires a special finding as to probative value. The State countered that, because the trial court found that there was no reasonable probability of falsity, there was no need to conduct a Rule 403 balancing test and that the trial court correctly denied Gallegos-Munoz's motion to admit prior-accusation evidence because he did not meet his burden of showing a reasonable probability of falsity. The trial court agreed with the State and denied Gallegos-Munoz's motion for a new trial on the basis that, consistent with *Burns II*, the trial court was not required

to make specific findings regarding the Rule 403 balancing test after it determined that there was no reasonable probability that J. R.'s prior accusation regarding her father was false. In Gallegos-Munoz's direct appeal, the Court of Appeals framed its understanding of the applicable standard as follows:

> Since *Burns [II]*, . . . this Court has repeatedly noted that the Supreme Court left unaddressed whether the threshold determination of the falsity of the statement should be determined by the trial court as a prerequisite to applying the Rule 403 balancing test. In *Vallejo v. State*, 362 Ga. App. 33 (865 SE2d 640) (2021), a whole court opinion with a split decision, [the Court of Appeals] ultimately held that *Burns* [*II*] did not overrule the threshold determination set forth in *Smith*. . . . [P]ost-*Vallejo*, the threshold requirement that the trial court first find a reasonable probability of falsity remains intact unless or until the Supreme Court says otherwise. . . . It is our duty to apply existing precedent.

*Gallegos-Munoz*, 369 Ga. App. at 281-282. Based on this understanding of *Burns II* and its own case law, the Court of Appeals held in this case that the trial court did not err in excluding the prior-accusation evidence, id. at 282, based on the trial court's determinations "that there was no reasonable probability that the victim made a false allegation against her father and that the

9

mother's testimony was not credible." Id. at 279.

2. Gallegos-Munoz contends that the trial court erred in denying his motion for a new trial. Specifically, he argues that, in *Burns II*, this Court eliminated the requirement adopted in *Smith* that a trial court make a threshold finding of "probable falsity" of prior-accusation evidence and held that trial courts should decide the admissibility of such evidence by applying the "usual rules of evidence." Gallegos-Munoz contends that, on retrial, the trial court "should be directed to analyze the admissibility of the false allegations evidence proffered by the defense under Rule 403 alone." We agree with the first contention but not with the second.

To clarify the consideration of prior-accusation evidence in sex offense trials governed by Georgia's 2013 Evidence Code, we undertake the following analysis: (a) we summarize our holding in *Smith* under the previous Evidence Code that Georgia's rape-shield statute does not bar prior-accusation evidence in sex offense trials and the announcement in *Smith* of a constitution-based rule that such evidence is per se admissible, which included the probable-

10

falsity threshold test; (b) we clarify that, when we affirmed in *Burns II* the "evidentiary holding" in *Smith*, that holding was limited to our holding in *Smith* that Georgia's rape-shield statute does not bar prior-accusation evidence; (c) we clarify our holding in *Burns II*, which eliminated *Smith*'s per se rule of admissibility and inherently eliminated the probable-falsity threshold test that was included in the per se rule of admissibility as an exception to that rule; (d) we discuss our Rule 403 analysis in *Burns II* and clarify our statement in that case regarding the probative value of prior-accusation evidence; (e) we discuss generally the application of the rules laid out in the 2013 Evidence Code to prior-accusation evidence proffered by a criminal defendant; and (f) we set out our holding in this case.

(a) *Our holdings in* Smith.

"The main issue on appeal" in *Smith* was "whether [former] OCGA § 24-2-3, commonly referred to as [Georgia's] rape-shield law, bar[red] admission of testimony regarding the victim's alleged past false accusations against persons other than the defendant." *Smith*, 259 Ga. at 135-136. We held that the rape-shield statute, which is

11

now codified in the 2013 Evidence Code as OCGA § 24-4-412, did not prohibit such testimony. Id. at 136-138 (1). In *Smith*, we agreed with the reasoning of some of our sister states that evidence of prior false accusations by the victim does not involve the victim's past sexual conduct, which is generally prohibited by rape-shield statutes, "but rather [involves] the victim's propensity to make false statements regarding sexual misconduct." Id. at 137 (1). Persuaded by the holdings of "a majority of jurisdictions that have considered the question" of whether "evidence that the prosecutrix in a sex-offense case has made prior false accusations against men other than the defendant," we held that "evidence of prior false accusations is admissible to attack the credibility of the prosecutrix and as substantive evidence tending to prove that the instant offense did not occur." Id. And in considering the State's argument that "even if the rape-shield law does not prohibit such testimony, the testimony relates to the victim's character, which can only be attacked by evidence of the victim's general reputation for veracity[,]" not by "specific instances of untruthfulness," id. (citing former OCGA §§ 24-

2-2; 24-9-84), we held that "the evidentiary rule preventing evidence of specific acts of untruthfulness must yield to the defendant's right of confrontation and right to present a full defense." Id.[3]

As we observed in *Burns II*, with this "constitutional" holding in *Smith*, this Court "create[d] a per se rule of admissibility for evidence of prior false allegations where falsity has been established, notwithstanding other rules of evidence." *Burns II*, 306

[3] In *Smith*, we did not explicitly identify the source of a "defendant's right of confrontation and right to present a full defense." *Smith*, 259 Ga. at 137 (1). We cited to three cases from other states that attributed that right to the federal constitution alone. See *Clinebell v. Commonwealth*, 368 SE2d 263, 266 (Va. 1988); *Commonwealth v. Bohannon*, 378 NE2d 987, 990 (Mass. 1978); *State v. Anderson*, 686 P2d 193, 200 (Mont. 1984). But in the same string cite in *Smith*, we also cited to three cases that did not mention either a defendant's right "of confrontation" or a defendant's right "to present a full defense." See *West v. State*, 719 SW2d 684, 687 (Ark. 1986), superseded by statute as noted in *Taylor v. State*, 138 SW3d 684, 686 (Ark. 2003); *People v. Wall*, 95 CalApp3d 978, 989 (1979); *People v. Hurlburt*, 166 CalApp2d 334, 342 (1958). And we also cited a law review article that discussed federal constitutional rights implicated in admitting or excluding sexual-conduct and false-accusation evidence. See Harriett R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Rev. 763, 858-863 (1986). All this is to say that it is not entirely clear whether we were referencing the Georgia Constitution, the United States Constitution, or both when we concluded that, for prior-accusation evidence, the evidentiary rule that a victim's character cannot be attacked by evidence of specific instances of untruthfulness must yield to the defendant's right of confrontation and right to present a full defense.

13

Ga. at 121 (2). Along with the constitution-based per se rule of admissibility that this Court "create[d]" in *Smith*, we followed the lead of other courts that had considered the admissibility of prior-accusation evidence and "adopt[ed]" the "rule" that, "before such evidence can be admitted, the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists." *Smith*, 259 Ga. at 137-138 (1) (citation and punctuation omitted). We observed that "[t]his rule helps protect the prosecutrix from unfounded allegations that she has made similar allegations in the past[.]" Id. at 138 (1). In announcing the threshold probable-falsity test in *Smith*, we did not mention whether Georgia trial courts could exclude prior-accusation evidence that met that threshold on the basis that the probative value of the evidence was outweighed by its negative effects, although trial courts did exclude other types of evidence based on a similar balancing test prior to the adoption of Rule 403 as part of the 2013

14

Evidence Code.[4]

(b) *Our "evidentiary" holding in* Burns II.

In *Burns*, the State filed a motion in limine to exclude evidence or argument concerning the alleged victim's past or present sexual behavior. See *Burns v. State*, 345 Ga. App. 822, 823 (813 SE2d 425) (2018) ("*Burns I*"). In response to the State's motion, the defendant argued that evidence that the victim made a prior false allegation was not covered by the rape-shield statute and was admissible for purposes of impeachment under Rule 608 (b).[5] See id. Specifically,

---

[4] See, e.g., *Hinton v. State*, 280 Ga. 811, 816 (4) (631 SE2d 365) (2006) ("Where an issue is raised whether the probative value of evidence is outweighed by its tendency to unduly arouse the jury's emotions of prejudice, hostility, or sympathy, a trial court's decision regarding admissibility is a matter of discretion."); *Smith v. State*, 255 Ga. 685, 686 (341 SE2d 451) (1986) ("Where an issue is raised, as to whether the probative value of evidence is outweighed by its tendency to 'unduly arouse the jury's emotions of prejudice, hostility or sympathy' the trial judge has discretion to be exercised in determining admissibility." (quoting McCormick on Evidence (2d ed.) § 185, p. 439)); *Carroll v. State*, 261 Ga. 553, 554 (2) (408 SE2d 412) (1991) ("Where evidence is challenged on the ground that its probative value is outweighed by its tendency to unduly prejudice the jury, the trial court must exercise its discretion in determining admissibility." (citation omitted)).

[5] In full, Rule 608 provides:
(a) The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, subject to the following limitations:

15

the defendant wanted to present evidence that, in the same one-paragraph social media post to a friend in which the alleged victim described a sexual encounter with the defendant, who was the victim's stepfather, the victim also stated, "[a]nd my brother's best friend tried to rape me." Id. at 822. When asked in a forensic interview about the attempted rape, the victim replied, "Oh, I just made that up." Id. at 823. See id. at 822; id. at 825-826 (3). The trial

---

(1) The evidence may refer only to character for truthfulness or untruthfulness; and
(2) Evidence of truthful character shall be admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
(b) Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than a conviction of a crime as provided in Code Section 24-6-609, or conduct indicative of the witness's bias toward a party may not be proved by extrinsic evidence. Such instances may however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness:
(1) Concerning the witness's character for truthfulness or untruthfulness; or
(2) Concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
(c) The giving of testimony, whether by an accused or by any other witness, shall not operate as a waiver of the accused's or the witness's privilege against self-incrimination when examined with respect to matters which relate only to character for truthfulness.

16

court determined that the statement, although a false one that met the *Smith* threshold test, "amount[ed] to an aside in a much longer paragraph" and "lacked specificity[.]" Id. at 823. Based on these considerations, the trial court determined that the statement about the brother's friend did not have "significant probative value for a fact finder otherwise charged with determining whether the claims against the [stepfather were] true" and that "the probative value of the statement in question [was] substantially outweighed by the danger of unfair prejudice and confusion of the issues[.]" Id. On this basis, the trial court granted the State's motion in limine and excluded the evidence pursuant to Rule 403. See id. The Court of Appeals held that the trial court properly determined that the *Smith* probable-falsity test was satisfied but held that the trial court abused its discretion in excluding the evidence under Rule 403. See id. at 824-825 (2); see also id. at 824 (1); id. at 825-826 (3) (holding that the defendant's assertion that the prior accusation evidence was also admissible under Rule 608 (b) "aligns with the constitutional concerns . . . as set forth in *Smith*[.]"). The Court of

17

Appeals reversed and remanded for resumption of the paused proceedings. See id. at 826 (3).[6]

We granted certiorari in *Burns II* "to reconsider" our "two-fold" decision in *Smith*. See *Burns II*, 306 Ga. at 118. The first part of our decision in *Smith* that we granted certiorari to review in *Burns II* was our "evidentiary" holding in *Smith* that Georgia's rape-shield

---

[6] The Court of Appeals was not persuaded by the trial court's determination that the danger of unfair prejudice and confusion of the issues substantially outweighed the probative value of the contested evidence. See *Burns I*, 345 Ga. App. at 825 (2). The Court of Appeals reasoned:

> Here, the trial court excluded evidence of the stepdaughter's false accusation because it concluded that the evidence "lacked specificity" and created "unfair prejudice and confusion of the issues." It is not clear, however, how a false accusation could contain adequate specificity about an incident that never occurred. And it does not seem that evidence of an allegation against a totally unrelated third party presents danger of unfair prejudice or confusion of the issues in this prosecution against one defendant, for sexual acts committed on one day, against one individual. See *Smith*, 259 Ga. at 137 (1), 377 SE2d 158 (noting that evidence of the victim's prior false allegations about sexual misconduct of men other than the defendant involved "the victim's propensity to make false statements regarding sexual misconduct"); see also *Olden v. Kentucky*, 488 U.S. 227, 232, 109 SCt 480, 102 LE2d 513 (1988) (explaining that speculation that jurors would be biased by evidence of witness's interracial relationship did not justify exclusion of evidence having the potential to demonstrate falsity of witness's testimony).

Id. at 825 (2) (punctuation omitted). The Court of Appeals held that the trial court therefore erred in excluding the evidence under Rule 403. See id.

18

law, former OCGA § 24-2-3, did not apply to prior-accusation evidence and did not prohibit such evidence, because prior-accusation evidence does not "concern[ ] the past sexual behavior of the complaining witness." Id. at 118-119 (1).

We held that this holding in *Smith* continued in force after the enactment of OCGA § 24-4-412 as part of the 2013 Evidence Code. *Burns II*, 306 Ga. at 120-121 (2). This was because Georgia's former rape-shield statute was not "materially identical" to the federal rule, and, when the General Assembly adopted Georgia's new Evidence Code, it did not replace former OCGA § 24-2-3 with a Code section modeled on its "federal counterpart[.]" Id. at 120 (2). Instead, the language of the iteration of the rape-shield statute enacted as part of the new Evidence Code "remain[ed] largely identical to the statute it replaced[, OCGA § 24-2-3,] . . . has remained substantively consistent for decades[,[7]] and has been carried over into the new Evidence Code[.]" Id. In sum, "the focus of [Georgia's rape-shield

---

[7] See Ga. L. 2011, p. 99, § 2; Ga. L. 2005, p. 20, § 13.1; Ga. L. 1989, p. 272, § 1; Ga. L. 1976, p. 741, § 1; see also Ga. L. 2019, p. 81, § 5.

statute] continues to be the exclusion of evidence concerning the 'past sexual behavior of the complaining witness.'" Id. at 120-121 (2) (citation and punctuation omitted). Based on the continuity of the language in Georgia's rape-shield statute, which did not track the language of the federal rape-shield statute, we concluded that "[o]ur evidentiary holding in *Smith* is consistent with the decades-old plain language of the Rape Shield Statute and remains good law in the era of the new Evidence Code." Id. at 121 (2).

(c) *Our "constitutional" holding in* Burns II.

The second part of the "two-fold" decision in *Smith* that we granted certiorari to review in *Burns II* was *Smith*'s "constitutional" holding, where this Court, "seemingly rel[ying] on the Sixth and Fourteenth Amendments[,] . . . create[d] a per se rule of admissibility for evidence of prior false allegations where falsity has been established, notwithstanding other rules of evidence." *Burns II*, 306 Ga. at 121 (2). The only check recognized in *Smith* on the per se rule of admissibility was the requirement that, before such evidence can be admitted, the trial court must make a threshold

20

determination "that a reasonable probability of falsity exists." *Smith*, 259 Ga. at 137 (citation and punctuation omitted). The inclusion of the phrase "where falsity has been established" when we framed *Smith*'s "constitutional" holding indicates that we considered *Smith*'s probable-falsity threshold test to be an integral part of the per se rule of admissibility. *Burns II*, 306 Ga. at 121 (2).

In *Burns II*, this Court held that *Smith*'s "constitutional" holding was "wrongly decided." *Burns II*, 306 Ga. at 120 (2). It follows that, when we jettisoned *Smith*'s rule of per se admissibility of prior-accusation evidence, the threshold finding of probable falsity standing alone could not and did not remain in effect under the 2013 Evidence Code. In *Burns II*, we overruled or disapproved numerous Georgia appellate court decisions that applied *Smith*'s probable-falsity standard. See id. at 124-125 (2) & n.3. As we explained in *Burns II*, courts should determine the admissibility of prior-accusation evidence by "applying the familiar and usual rules of evidence," laid out in the current Evidence Code, "which trial courts routinely do every day." *Burns II*, 306 Ga. at 124 (2).

21

As noted above, our case law appears to have generated confusion over what we meant when we stated that "the evidentiary holding of *Smith* . . . survived the enactment of Georgia's new Evidence Code[.]" *Burns II*, 306 Ga. at 120 (2). To clarify, this evidentiary holding was not the requirement that a trial court must first determine whether a victim's prior accusation was probably false before admitting that evidence. Rather, the evidentiary holding of *Smith* that we reaffirmed in *Burns II* was that the rape-shield statute, OCGA § 24-4-412 (former OCGA § 24-2-3), does not categorically bar prior-accusation evidence. See *Burns II*, 306 Ga. at 119 (1); id. at 119-120 (2); *Vallejo*, 362 Ga. App. at 53-57, McFadden, J., dissenting. See also Division 2 (b), supra.[8] To the extent that other cases decided after *Burns II* were premised on the mistaken understanding that the requirement of a threshold determination of probable falsity was the "evidentiary holding" of *Smith* that

---

[8] In *Smith*, we addressed another evidentiary issue, concerning expert testimony, see *Smith*, 259 Ga. at 138 (2), but we did not address that issue in *Burns II*.

22

remained good law after *Burns II*, those cases are overruled in that respect.[9]

(d) *Our Rule 403 analysis in* Burns II.

In *Burns II*, after affirming *Smith*'s evidentiary holding and reversing its constitutional holding, we then turned to "how OCGA § 24-4-403 applies to evidence of prior false allegations by a complaining witness in a sexual offense prosecution." *Burns II*, 306 Ga. at 125 (3).[10] Noting that Georgia's Rule 403 "tracks its federal

---

[9] See, e.g., *Vallejo v. State*, 362 Ga. App. 33, 38 (1) (865 SE2d 640) (2021) ("[T]he threshold determination requirement remains good law after *Burns* [*II*].").; *State v. Parks*, 350 Ga. App. 799, 811-812 (2) (830 SE2d 284) (2019) (After *Burns II*, "before [prior-accusation] evidence can be admitted, the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists." (citation and punctuation omitted).

[10] Initially we deemed "incorrect" the Court of Appeals's "determin[ation in *Burns I*] that OCGA § 24-4-403 does not apply to false allegation evidence such as that at issue here." *Burns II*, 306 Ga. at 125 (3). However, this conclusion somewhat oversimplified the *Burns I* holding. Although the Court of Appeals stated that, under *Smith*, Rule 403's "exclusionary rule must yield to greater constitutional concerns[,]" *Burns I*, 345 Ga. App. at 824 (2), the Court of Appeals did not hold categorically that Rule 403 does not apply to prior-accusation evidence. The Court of Appeals reviewed on the merits the trial court's pretrial Rule 403 analysis of the particular prior-accusation evidence that was contested by the defendant and concluded that, under the circumstances of the case, exclusion of that evidence "was erroneous." See id. at 825 (2).

counterpart," we looked to decisions of the United States Supreme Court and held that "there [was] no constitutional impediment to applying OCGA § 24-4-403" in that case. Id. at 126 (3).[11] We then reviewed on the merits the trial court's Rule 403 analysis. Id. We reasoned that,

> [i]n a sexual offense prosecution, where, like here, the case comes down to witness credibility, evidence that the complaining witness has made a prior false allegation of sexual misconduct is not of "scant" probative force.[12] See *Olds*[ *v. State*, 299 Ga. 65, 76 (786 SE2d 633) (2016)], (recognizing that the probative value of disputed evidence depends, in part, upon the need for such evidence). As to the issue of "unfair prejudice," the primary concern is that a jury will decide a case on an improper basis, commonly, though not necessarily, an emotional one. Here, it is unclear how [the complaining witness's] admittedly false

---

[11] See *Holmes v. South Carolina*, 547 U.S. 319, 326 (126 SCt 1727, 164 LE2d 503) (2006) ("[T]he exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote[]" violates a criminal defendant's constitutional guarantee of "a meaningful opportunity to present a complete defense," but "well-established rules of evidence[,]" including Rule 403, "permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.").

[12] See *Hood v. State*, 299 Ga. 95, 103 (4) (786 SE2d 648) (2016) ("The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. *United States v. Utter*, 97 F3d 509, 514-515 (11th Cir. 1996)." (punctuation omitted)).

statement would inflame passions of the jury or inspire an emotional decision rather than facilitate a reasoned decision based on the evidence and determinations of credibility. Finally, with respect to "confusion of the issue," this prosecution involves one defendant and a single incident that allegedly occurred in July 2015. The false allegation at hand plainly describes an event involving someone else at a separate time; there is no basis for confusion.

Id. (citation and punctuation omitted). Thus, we concluded, the trial court abused its discretion in excluding the evidence under Rule 403. Id. We affirmed the Court of Appeals's judgment, which reversed the trial court's ruling and remanded the case. Id.

Our categorical statement in *Burns II* that, in a sex offense prosecution turning on witness credibility, "evidence that the complaining witness has made a prior false allegation of sexual misconduct is not of 'scant' probative force" was overly broad. *Burns II*, 306 Ga. at 126 (3). As we discuss in greater detail in Division 2 (e), infra, the determination under OCGA § 24-4-401 ("Rule 401") of whether evidence meets the statutory definition of relevance and the determination under Rule 403 of whether the probative value of relevant evidence is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence are both "fact-bound analys[es]" that "must turn on the facts of each specific case[.]" *Chrysler Group, LLC v. Walden*, 303 Ga. 358, 367 (II) (A), 371 (II) (B) (812 SE2d 244) (2018) (citation omitted). See also *Morrell v. State*, 313 Ga. 247, 259 (2) (b) (869 SE2d 447) (2022) ("Because each case is unique, Rule 403 balancing is a highly context-specific inquiry; there are few categorical rules." (citation and punctuation omitted)). For example, in a case where a defendant is accused of child molestation based on an act of fondling his stepdaughter, the defense intends to argue that the alleged victim falsely accused the defendant in retaliation for discipline he imposed, and the defense wishes to adduce evidence that the alleged victim had falsely accused a number of other known authority figures of fondling her in order to retaliate for disciplining her, a trial court could reasonably determine that the prior-accusation evidence has

26

significant probative value.[13] If, on the other hand, a defendant is accused of raping a middle-aged stranger and wishes to adduce evidence that the alleged victim as a minor had falsely accused her stepfather of fondling her many years earlier, a trial court could reasonably determine that the prior-accusation evidence has only minimal probative value. Therefore, courts should not cite *Burns II* as authority for the categorical proposition that evidence that the complaining witness in a sex offense prosecution had made a prior

---

[13] See *Secretary, Florida Dept. of Corrections v. Baker*, 406 F. Appx. 416, 424-425 (IV) (11th Cir. 2010) (A defendant convicted under Florida law of sexual battery on a child under 16 years of age, who was his sister-in-law, was entitled to a writ of habeas corpus for a violation of his rights under the Sixth and Fourteenth Amendments, where the state trial court excluded evidence that the alleged victim had repeatedly lied about sexual assaults by other male family members. In granting habeas relief, the district court determined that the trial court excluded the evidence, not "out of concerns such as harassment, prejudice, confusion, or a policy of protecting sexual-assault victims," but in light of Florida's rules of evidence regarding impeachment. In affirming the district court's ruling, the Court of Appeals determined that the alleged victim's truthfulness was "key to the prosecution," that the evidence of the victim's prior false accusations "not only spoke to her general character for truthfulness, but particularly attacked her truthfulness and motivation for testifying as they related directly to her allegation" against the defendant, that the prior-accusation evidence had "strong potential to demonstrate the falsity of her testimony in [the defendant's] case," and that "a reasonable jury might have received a significantly different impression of her credibility had defense counsel been permitted to pursue his proposed line of cross-examination." (citation and punctuation omitted)).

false accusation of sexual misconduct will in every case have sufficient probative value to pass a Rule 403 balancing test.

(e) *Application of the 2013 Evidence Code to prior-accusation evidence.*

Under *Smith* and its progeny, prior-accusation evidence was admitted or excluded under rules and procedures that were specific to that one category of evidence. As we have explained, the 2013 Evidence Code created a "new evidence world" in Georgia. *State v. Orr*, 305 Ga. 729, 736 (3) (827 SE2d 892) (2019) (punctuation omitted). "The [2013 Evidence] Code, which was modeled in large part on the Federal Rules of Evidence, is far more extensive and comprehensive than the statutes it replaced[.]" Id. The 2013 Evidence Code "precludes courts from promulgating or perpetuating judge-made exclusionary rules of evidence . . . and instead generally requires trial courts to determine the admissibility of evidence based on the facts of the specific case and the rules set forth in the Evidence Code[.]" Id. at 729. See also id. at 738 (3) (OCGA § 24-4-402 "was modeled on Federal Rule of Evidence 402, which was

28

designed to wipe the slate clean of judicially created limitations on the admissibility of relevant evidence, replacing them with new, codified rules of exclusion." (citation and punctuation omitted)). In particular, the 2013 Evidence Code does not provide any category-specific rules for prior-accusation evidence, and courts therefore should determine the admissibility of such evidence based on the rules applicable to evidence in general. See *Orr*, 305 Ga. at 736-737 (3).

Although *Smith*'s threshold probable-falsity test no longer applies, the trial court still has a gatekeeping role under the 2013 Evidence Code in addressing preliminary questions about what evidence reaches the jury. See *Wilson v. State*, 312 Ga. 174, 184 (1) (c) (860 SE2d 485) (2021) (discussing OCGA § 24-1-104 ("Rule 104"). A fundamental question is relevancy, because relevant evidence is admissible, unless a specific exception applies, and irrelevant evidence is inadmissible. See OCGA § 24-4-402 ("Rule 402");[14] *Baker*

---

[14] In full, Rule 402 provides: "All relevant evidence shall be admissible, except as limited by constitutional requirements or as otherwise provided by

*v. State*, 318 Ga. 431, 440-441 (2) (a) (899 SE2d 139) (2024); *Orr*, 305

Ga. at 736-737 (3).[15] If a defendant wishes to adduce prior-accusation

evidence, the State may object and argue that the evidence is not

relevant to the charges at issue. "Rule 401 first defines relevant

evidence broadly as 'evidence having any tendency to make the

existence of any fact that is of consequence to the determination of

the action more probable or less probable than it would be without

the evidence.'" *Orr*, 305 Ga. at 736 (3).[16] "The test for relevance is

generally a liberal one, and relevance is a binary concept — evidence

is relevant or it is not." *Baker*, 318 Ga. at 440 (2) (a) (citation and

punctuation omitted). Under Rule 104 (a), preliminary questions

concerning the admissibility of evidence are resolved by the trial

---

law or by other rules, as prescribed pursuant to constitutional or statutory authority, applicable in the court in which the matter is pending. Evidence which is not relevant shall not be admissible."

[15] See *Harris v. State*, 314 Ga. 238, 264 (3) (a) (875 SE2d 659) (2022) (Rule 402 "is modeled on its counterpart in the Federal Rules of Evidence, [and, therefore,] we may look to federal appellate precedents interpreting the pertinent federal rule for guidance in applying the state provision.").

[16] See *Harris*, 314 Ga. at 264 (3) (a) (Rule 401 "is modeled on its federal counterpart.").

court by a preponderance of the evidence standard. See *Bradshaw v. State*, 296 Ga. 650, 656 n.4 (3) (769 SE2d 892) (2015) ("Our new Evidence Code . . . adopted the preponderance of the evidence standard for preliminary factual questions regarding the admissibility of evidence." (citation omitted)); Rule 104 (a).[17] Under

---

[17] In full, Rule 104 provides:

(a) Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b) of this Code section. In making its determination, the court shall not be bound by the rules of evidence except those with respect to privileges. Preliminary questions shall be resolved by a preponderance of the evidence standard.

(b) When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

(c) Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be conducted out of the hearing of the jury when the interests of justice require or when an accused is a witness and requests a hearing outside the presence of the jury.

(d) The accused shall not, by testifying upon a preliminary matter, become subject to cross-examination as to other issues in the proceeding.

(e) This Code section shall not limit the right of a party to introduce before the jury evidence relevant to weight or credibility.

With respect to the portion of Rule 104 (a) that references trial courts not being "bound by the rules of evidence except those with respect to privileges," a leading Georgia evidence treatise has explained that "in making admissibility determinations under [Rule 104 (a)], the court may consider hearsay and other non-privileged material that generally would be inadmissible under the

Rule 104 (b), when the relevancy of evidence depends upon proof of a conditional fact, the trial court examines all the evidence in the case and admits the evidence if a jury could reasonably find the conditional fact by a preponderance of the evidence. See *Huddleston v. United States*, 485 U.S. 681, 690 (108 SCt 1496, 99 LE2d 771) (1988); 2 Jones on Evidence, § 11:23 (7th ed.).

Since *Burns II*, the Court of Appeals has generally regarded prior-accusation evidence to be relevant and has considered the admissibility of such evidence in terms of Rule 403,[18] "which grants the trial court discretion to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" See *Orr*, 305 Ga. at 737 (3) (emphasis omitted), quoting

Federal Rules of Evidence." See Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence 40 (9th ed. 2024).

[18] See *Vallejo,* 362 Ga. App.at 38-41 (2); *Ray v. State*, 356 Ga. App. 266, 269 (841 SE2d 477) (2020).

Rule 403. While relevance is a binary concept, as noted above, "probative value is relative."[19] *Jones v. State*, 301 Ga. 544, 546 (1) (802 SE2d 234) (2017) (quoting *Olds*, 299 Ga. at 75 (2)). "Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value." *Baker*, 318 Ga. at 442 (2) (a). Probative value depends on the quality of the evidence, the strength of its logical connection to the fact for which it is offered, its marginal worth when there is other proof available to establish the same fact, and the need for the evidence in proving a fact that is reasonably susceptible of dispute. See id.

---

[19] We disapprove the Court of Appeals's statement in *Ray* that, "in order to make a definitive determination of whether . . . testimony [that the person who reported the alleged rape victim's outcry to the police had previously made false accusations of sexual abuse against other men] was relevant, the trial court was obligated to consider whether the probative value of the evidence was 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence'" under Rule 403. *Ray*, 356 Ga. App. at 269. As we have explained, "[r]elevance and probative value [under the 2013 Evidence Code] are related, but distinct, concepts." *Olds*, 299 Ga. at 75 (2). See also *Jones v. State*, 301 Ga. 544, 546-547 (1) (802 SE2d 234) (2017). Although "an accurate assessment of probative value is an essential part of a proper application" of Rule 403's balancing test for the admissibility of relevant evidence, an assessment of probative value plays no part in a ruling on relevance under Rule 401. Id. at 546 (1). See also *Olds*, 299 Ga. at 75 (2).

Georgia's Rule 403 "mirrors Federal Rule of Evidence 403, and we have accordingly interpreted our State's new rule in light of the federal appellate decisions interpreting the federal rule." *Baker*, 318 Ga. at 442 (2) (a). See also Ga. L. 2011, p. 99, § 1. "Looking to Eleventh Circuit precedent, we have explained that Rule 403 requires the trial court to apply the rule's balancing test to the facts and circumstances of the particular case at hand: There is no mechanical solution for this balancing test." *Orr*, 305 Ga. at 737 (3) (citation and punctuation omitted). Rather, "a trial court must undertake in each case a considered evaluation of the proffered justification for the admission of such evidence and make an independent determination of whether the probative value of the evidence is 'substantially outweighed'" by any of the negative effects laid out in Rule 403. Id. (citation and punctuation omitted). And in conducting a Rule 403 analysis of proposed evidence, courts can take into account the risk that presenting evidence of certain conduct would result in a "mini-trial," where the evidence does not bear directly on the charges at issue and where the conduct is not

conceded by all to have taken place. See *Strong v. State*, 309 Ga. 295, 317 & n.23 (4) (845 SE2d 653) (2020).[20] As we have emphasized, however, "the exclusion of [relevant] evidence under Rule 403, is an extraordinary remedy that should be used only sparingly to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Orr*, 305 Ga. at 737-738 (3) (citation and punctuation omitted). See also *Wilson*, 312 Ga. at

---

[20] See also *United States v. Crow Eagle*, 705 F3d 325, 329 (III) (8th Cir. 2013) (holding that, because the defendant provided weak proof of the falsity of the alleged victims' previous allegations of sexual assault by other men, relying only on a long delay between the alleged assaults and reports and the lack of prosecution, and because admission of the evidence would have triggered mini-trials concerning allegations unrelated to the defendant's case, and thus increased the danger of jury confusion and speculation, the district court did not abuse its discretion or violate the defendant's Sixth Amendment rights by excluding evidence of the prior sexual-assault allegations); *United States v. Frederick*, 683 F3d 913, 919 (I) (A) (8th Cir. 2012) (holding that the probative value of cross-examination of an alleged sexual abuse victim about prior allegedly false accusations of sexual abuse against third parties was substantially outweighed by the danger of unfair prejudice from jury confusion and mini-trials concerning allegations unrelated to the defendant's case); *United States v. Tail*, 459 F3d 854, 860 (8th Cir. 2006) ("[I]n a sexual abuse case, evidence alleging that the accuser made prior false accusations may be excluded [under Fed. R. Evid. 403] if the evidence has minimal probative value. And the propriety of excluding such evidence is strengthened where the prior incident is unrelated to the charged conduct, and where the defendant intends to use the evidence as part of an attack on the 'general credibility' of the witness." (citations omitted)).

190 (2) ("[I]n reviewing the admission of evidence under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (citation and punctuation omitted)).

The fact that prior-accusation evidence may no longer be excluded under *Smith* and its progeny, however, does not mean that it may be excluded *only* pursuant to Rule 403, as Gallegos-Munoz infers from *Burns II*. Many rules in the Evidence Code "embody legislative policy decisions" about the risks of negative effects "associated with certain categories of evidence, including the 15 rules in Chapter 4 that authorize the exclusion of certain specific types of evidence." *Orr*, 305 Ga. at 737 (3) (citing OCGA §§ 24-4-404 through 24-4-418). See also *Burns II*, 306 Ga. at 125-126 (3) ("[T]he United States Supreme Court has recognized that Rule 403 is one of any number of familiar and unquestionably constitutional evidentiary rules that authorizes the exclusion of relevant evidence." (citation and punctuation omitted)). The Evidence Code's rules of exclusion may apply separate and apart from the clarified

36

*Burns II* analysis that we explain today. For example, the inference that a defendant wishes the jury to draw from prior-accusation evidence is generally that the alleged incident with the defendant did not happen or that the testifying alleged victim lacks credibility regarding the defendant's alleged offense, based on evidence that the victim had falsely accused someone other than the defendant of sexual abuse. Such inferences implicate at least two types of propensity or character evidence[21] that are generally subject to exclusion: evidence of the character of a person in order to show action in conformity therewith on a particular occasion under OGGA § 24-4-404 ("Rule 404") or extrinsic evidence of specific instances of the conduct of a witness for the purpose of attacking the witness's character for truthfulness under Rule 608.[22]

---

[21] See *Burns II*, 306 Ga. at 118-119 (1) ("[T]estimony of previous false allegations by the victim . . . involve[s] . . . the victim's propensity to make false statements regarding sexual misconduct." (citation and punctuation omitted)); *Smith*, 259 Ga. at 137 (1) ("[E]vidence of prior false allegations by the victim . . . involve[s] . . . the victim's propensity to make false statements regarding sexual misconduct.").

[22] See *United States v. Farmer*, 923 F2d 1557, 1567 (11th Cir. 1991) ("The witness's motive to testify falsely is merely an aspect of credibility controlled

The rules of exclusion for propensity or character evidence are subject to exceptions. Character evidence may be admissible under Rule 404 (a) (2) as to "a pertinent trait of character of the alleged victim" of a crime; or, as the defendant in *Burns II* argued, on cross-examination under Rule 608 (b), to show "specific instances of the conduct of a witness, for the purpose of attacking . . . the witness's character for truthfulness." Other rules applicable to specific circumstances may apply. Whichever rules are invoked by the State as a basis for objecting to prior-accusation evidence, or by the defendant in arguing against an objection, the standards generally applicable under the Code sections relied upon will apply.

(f) Because the trial court and the Court of Appeals believed incorrectly that the now-displaced probable-falsity standard adopted in *Smith* applied in this case, they did not conduct the

---

by Fed. R. Evid. 608." (quoting *United States v. Sampol*, 636 F2d 621, 659 n.24 (D.C. Cir. 1980), punctuation omitted)); *Douglas v. State*, 340 Ga. App. 168, 173 (2) n.13 (796 SE2d 893) (2017) (citing Ronald L. Carlson & Michael Scott Carlson, *Carlson on Evidence*, p. 327 (4th ed. 2016) ("Prior false allegations of sexual misconduct are considered in federal and state courts under Rule 608 (b).")).

analysis required by the 2013 Evidence Code. See *Orr*, 305 Ga. at 739 (3); see id. 743 (4) (c). We therefore vacate the Court of Appeals's judgment that affirmed the trial court's judgment and affirmed the denial of Gallegos-Munoz's motion for a new trial. We direct the Court of Appeals to vacate the trial court's rulings and remand the case for further proceedings consistent with this opinion.[23]

*Judgment vacated, and case remanded with direction. All the Justices concur.*

---

[23] If on remand the trial court determines  that the prior-accusation evidence was properly excluded under the applicable rules of evidence, it should enter an order to that effect and reinstate Gallegos-Munoz's conviction. See *Ray*, 356 Ga. App. at 270. If, on the other hand, the trial court determines that the prior-accusation evidence was improperly excluded under the applicable rules of evidence, it should consider whether Gallegos-Munoz was prejudiced by the error and conduct further proceedings accordingly. Id.